IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHERYL SHIGLEY, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. JKB-23-02717 |
| TYDINGS & ROSENBERG LLP, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Cheryl Shigley has brought this action against her former employer, Defendant Tydings & Rosenberg, LLP ("Tydings"), alleging religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Pending before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6.) The Motion is fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court will grant the Motion.

## I.   Statement of Facts[1]

Plaintiff was employed as a legal secretary at Tydings, a Baltimore-based law firm, for over thirty years. (ECF No. 1 at 2, 5.) In March 2020, Tydings—like many firms—transitioned to fully remote work in response to the COVID-19 pandemic. (*Id.* at 2.) "Approximately five months later" (presumably around August 2020), the firm began requiring support staff, including Plaintiff, to work in-person at the office on at least a part-time basis. (*Id.*) While working in the

---

[1] For the purpose of deciding on the Motion to Dismiss, the Court accepts as true all well-pleaded allegations in the Complaint and views the facts in the light most favorable to Plaintiff. *See Bass v. Weinstein Mgmt. Co., Inc.*, 56 F.4th 355, 360 (4th Cir. 2022).

office, Plaintiff wore a mask in common areas and practiced social distancing. (*Id.*)

In approximately April 2021, Tydings decided to make its office space available for lawyers who wished to return to the office. (*Id.*) In furtherance of this goal, Tydings announced that as of September 1, 2021, all employees would be required to submit proof of vaccination against the COVID-19 virus as a condition of their employment. (*Id.* at 2–3.) Under the terms of Tydings' vaccine policy, employees were required to either submit proof of vaccination, or apply to firm management for an exemption from the vaccine requirement. (*Id.* at 3.)

In July 2021, Plaintiff applied for a religious exemption to the vaccine requirement. (*Id.*) A lawyer from the firm subsequently contacted Plaintiff by phone and asked questions regarding the sincerity of her religious beliefs. (*Id.*) She was asked questions about "what church she attended," and "about her religious views, her views on morality and ethics, and the nature of her religion." (*Id.*) In response to these questions, Plaintiff "explained that the vaccines had been developed and tested using tissue cell lines from involuntarily aborted fetuses," a practice she finds "abhorrent and in violation of her religious views." (*Id.*)

The lawyer from Tydings asked Plaintiff what sort of accommodations she was requesting. (*Id.* at 3–4.) Plaintiff replied that she "was willing to consider any sort of reasonable accommodation and listed, as examples, remote work, masking, testing, social distancing, changing the space where she worked, and a cut in pay." (*Id.* at 4.) However, Tydings did not consider any of these accommodations, even though the firm had extra unused office space which could have been used for social distancing, and even though it could have installed plexiglass barriers to separate Plaintiff from other employees. (*Id.*)

Tydings ultimately denied Plaintiff's request for an exemption from the vaccine requirement. (*Id.*) Plaintiff is not aware of any employees who were granted exemptions. (*Id.*)

2

Tydings "deemed [Plaintiff's] religious views as lacking in sincerity, citing the fact that during the pandemic [Plaintiff] and her husband had purchased a second home, a common occurrence among attorneys and other employees of Tydings." (*Id.*) The firm erroneously "inferred from this fact that [Plaintiff] was unwilling to return to work full-time in the office." (*Id.*) Plaintiff insists that she "was always willing to work in the office, or remotely, and to follow any mitigating measures as required by Tydings." (*Id.* at 5.) Plaintiff contends that permitting her to continue to work remotely would have been a reasonable accommodation, because Tydings functioned in an all-remote context for much of 2020. (*Id.* at 10.)

Tydings fired Plaintiff on September 1, 2021, "solely and directly as the result of her decision to follow her conscience and not be vaccinated." (*Id.* at 11.) Tydings has not offered to reinstate Plaintiff since that date, "despite the fact that it has hired other secretaries and there is no longer a need for COVID-19 restrictions of any type." (*Id.*) Further, Plaintiff alleges that Tydings was aware since before September 2021 that "vaccination was not the only means by which to mitigate and control the spread of COVID-19" and that, by that time, it was "well known" that, although the vaccine may reduce the severity of symptoms, "the vaccines do not prevent the spread of the disease." (*Id.*)

Plaintiff alleges that the COVID-19 vaccine was developed from cell lines using aborted fetal tissue, and she states that "[c]onscientious religious individuals, including [Plaintiff], are opposed to the use of such cell lines, especially in light of the fact that alternate cell lines are available, and further use of the aborted fetal tissue cell lines are seen as using the fruits of immoral actions." (*Id.* at 12.)

Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in January 2022, and received a right-to-sue letter on August 31, 2023.

3

(*Id.* at 6.) She filed the instant suit in October 2023.

In Count I, Plaintiff alleges that Tydings discriminated against her on the basis of her religion in violation of Title VII. (*Id.* at 13–17.) In Counts II and III, she alleges that Tydings violated the ADA by making unlawful medical inquiries and discriminating against Plaintiff's perceived disabilities, respectively. (*Id.* at 17–24.) Plaintiff seeks compensatory and punitive damages, injunctive relief, and attorney's fees. (*Id.* at 24–25.)

## II.   Standard of Review

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). To survive a motion to dismiss, the complaint "must include 'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility" when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S at 678. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

## III.  Title VII Claim

Title VII makes it unlawful for an employer to take an adverse employment action against an individual "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). The statute defines religion to "include[] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct

of the employer's business." *Id.* § 2000e(j).

Under Title VII, employers are under a duty to "make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (quotation omitted). To establish that an employer violated this duty, a plaintiff must show that: (1) she has a bona fide religious belief that conflicts with a job requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failure to comply with the job requirement. *Id.*

Defendant does not dispute that Plaintiff has adequately alleged the latter two elements. As to the first element, the questions before the Court are whether Plaintiff's "purported beliefs are both (1) 'sincerely held' and (2) 'religious' in nature." *Ellison v. Inova Health Care Servs.*, ___ F. Supp. 3d ___, Civ. No. 23-00132 (MSN/LRV), 2023 WL 6038016, at *4 (E.D. Va. Sept. 14, 2023) (quoting *Welsh v. United States*, 398 U.S. 333, 339 (1970)).[2]

As to the first prong, Plaintiff has adequately pled that her beliefs are sincerely held, as there is no basis from the face of the Complaint to conclude that Plaintiff's "beliefs have been concocted for litigation or are otherwise disingenuous." *Ellison*, 2023 WL 6038016, at *4.

The second prong is where Plaintiff falters. "The determination of what is a 'religious' belief is more often than not a difficult and delicate task." *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). On the one hand, it is well established that it is not proper "to question the correctness or even the plausibility of [a Title VII plaintiff's] religious understandings." *Consol Energy*, 860 F.3d at 142. On the other hand, no employee is entitled to a blanket exemption entitling them to make "unilateral decisions" about which job requirements

---

[2] In support of her Title VII claim, Plaintiff has attached an appellate brief submitted by the EEOC in 2023 in an Eighth Circuit case. (ECF No. 8-1.) The EEOC has not moved to intervene or file an amicus brief in this case, and accordingly the EEOC's position has not been properly presented to the Court for consideration.

to comply with, "even where religion is expressly invoked in communicating the beliefs." *Foshee v. AstraZenica Pharms. LP*, Civ. No. SAG-23-00894, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023). Ultimately, the question before the Court is whether the beliefs are based on a system that is recognizably a religious "scheme of things," *Welsh*, 398 U.S. at 339, rather than secular morality or personal health, convenience, preference, or whim, *see Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001) ("While an employer has a duty to accommodate an employee's religious beliefs, [it] does not have a duty to accommodate an employee's preferences.").[3]

Here, Plaintiff has failed to adequately plead that her objection to the COVID-19 vaccine was based on religious beliefs. As an initial matter, at no point in the Complaint does she identify *what* religion, if any, she subscribes to, nor does she explain how her opposition to abortion ties into her religious beliefs. She merely states that "[s]he, like many religious Americans, finds [the use of vaccines derived from aborted fetal cell lines] abhorrent and in violation of her religious views." (ECF No. 1 at 3.) The only other explanation of her religious beliefs is as follows:

> Conscientious religious individuals, including Mrs. Shigley, are opposed to the use of such cell lines, especially in light of the fact that alternate cell lines are available, and further use of the aborted fetal tissue cell lines are seen as using the fruits of immoral actions.

(ECF No. 1 at 12.)

The Court finds a recent case from the District of New Jersey, *Aliano v. Township of*

---

[3] To determine whether an employee's beliefs are religious in nature, many courts in this Circuit have applied the test set forth in *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981). *See, e.g., Ellison*, 2023 WL 6038016, at *4; *Foshee*, 2023 WL 6845425, at *4. Under this test, the Court asks whether (1) the "religion addresses fundamental and ultimate questions having to do with deep and imponderable matters"; (2) whether the "religion is comprehensive in nature"; and (3) whether the religion is characterized by "the presence of certain formal and external signs." *Africa*, 662 F.2d at 1032. Defendant argues that the Complaint fails to set forth facts needed to satisfy the *Africa* factors. (ECF No. 9 at 6.) However, the *Africa* court emphasized that the test is meant to be flexible, 662 F.2d at 1032 n.13, and courts have recognized that the religiosity inquiry is necessarily individualized, *Menk v. Mitre Corp.*, Civ. No. 23-00053-JRR, 2024 WL 327087, at *15 (D. Md. Jan. 29, 2024). Moreover, *Africa* was decided in the context of a request for a permanent injunction, *see* 662 F.2d at 1026—where the plaintiff has a higher evidentiary burden—and dealt with a plaintiff claiming that a novel organization was in fact a religion, a claim not at issue here. Accordingly, the Court does not require Plaintiff to satisfy the *Africa* test to survive a Motion to Dismiss.

*Maplewood*, instructive. Civ. No. 22-5598, 2023 WL 4398493 (D.N.J. July 7, 2023). In that case, a group of municipal employees sued the township over a vaccine requirement. *Id.* at 1. On a motion to dismiss, the court distinguished between those employees who adequately articulated religious opposition to the vaccine requirement and those who did not. The court found that four plaintiffs "adequately connected [their] anti-abortion beliefs to [their] religion and objection to Maplewood's COVID-19 vaccine mandate" when they identified their religion and cited scriptural passages that they believed provided the foundation for their anti-abortion stance. *Id.* at *6–9. By contrast, two plaintiffs—Plaintiffs Beischer and Gil—did not provide sufficient allegations:

> Beischer's exemption request states only that he is "a baptized Roman Catholic, and due to my Catholic beliefs, I am requesting exemption from the COVID-19 vaccine" and that "using aborted fetal cells and/or aborted fetal cell lines, are in direct conflict with my religious beliefs." These conclusory statements fail to provide a sufficient connection between Beischer's objection to the COVID-19 vaccines—that they were "developed and/or produced using aborted fetal cells"—and his subjective religious beliefs. Beischer did not provide any additional information regarding the nature of his beliefs as a Roman Catholic, including how receiving the COVID-19 vaccine would violate those beliefs. . . .
>
> Aliano does not provide any information on how his opposition to abortion arises from his subjective beliefs regarding his Christian belief-system. Aliano merely provides the conclusory statements that "[t]he Johnson and Johnson vaccine does not utilize the mRNA technology, but it also presents a challenge to my religious belief" and that "[a]s a Devout Christian, I cannot use this vaccine given its known origins which is linked to such a sacrilegious event." Aliano does not explain how abortion is sacrilegious in his belief-system or in his own scheme of things.

*Id.* at 10, 12 (citations omitted).

Here, Plaintiff provides even *less* detail than Beischer or Aliano did. Unlike those claimants, Plaintiff does not state what religion, if any, she subscribes to. Without any explanation as to what Plaintiff's religious beliefs are, or how her opposition to abortion is tied to her religion, the Court is left with the bare allegation that the vaccine mandate violates her religious beliefs. In similar circumstances, courts in this Circuit have held that such allegations are insufficient. *See*

7

*Ellison*, 2023 WL 6038016, at *7 (holding plaintiff failed to explain how her opposition to a vaccine mandate was religious when her only relevant allegation was that she has "religious objections to abortion, and to receiving vaccines"); *Menk v. Mitre Corp.*, Civ. No. 23-00053-JRR, 2024 WL 327087, at *8 (D. Md. Jan. 29, 2024) (holding plaintiffs failed to establish that their objections to a vaccine mandate were based on religion when they "fail[ed] to allege what religion they practice or what subjective religious beliefs they maintain").

Finally, Plaintiff cites to a string of cases in which courts have held that religious discrimination claims related to opposition to the vaccine requirement were viable. (*See* ECF No. 8 at 23–24.) These cases are distinguishable, because—unlike here—the plaintiffs in those cases at a minimum explained what religion they adhered to or how their religious beliefs informed their opposition to the vaccines. *See Collins v. Tyson Foods, Inc.*, 665 F. Supp. 3d 845, 856 (W.D. Ky. 2023) ("Collins alleges that due to his Christian beliefs, he would not receive a COVID-19 vaccination" because of abortion-related concerns); *Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) ("The record shows that Appellants swear that they are Christians who 'believe in the sanctity of life.'"); *Kather v. Asante Health Sys.*, Civ. No. 1:2201842-MC, 2023 WL 4865533, at *3–5 (D. Or. July 28, 2023) (holding some plaintiffs adequately explained how their opposition to abortion was tied to specific religious beliefs); *Ellison*, 2023 WL 6038016, at *6 (plaintiff cited to Biblical verses and explained how they informed a religious view that "life begins at conception"); *Miller v. Charleston Area Med. Ctr.*, Civ. No. 2:23-00340, 2023 WL 7549365, at *4 (S.D. W. Va., Nov. 14, 2023) ("Mr. Miller is a member of the United Methodist Church and holds religious objections to the use of aborted fetal cells in the production of all COVID-19 vaccines" (cleaned up)).[4]

---

[4] A single district court opinion, cited by Plaintiff, appears to have assumed a more relaxed standard for a Title VII plaintiff alleging that a vaccine objection is religiously motivated. *See Smith v. Terminix Pest Control, Inc.*, Civ. No.

8

The Court emphasizes that the bar for pleading a Title VII religious discrimination claim is not a high one. It is not the Court's role to second-guess the logic or reasonableness of a claimant's sincerely held religious views. Nor is it the place of the Court to demand that a plaintiff justify her beliefs through a detailed theological account or scriptural exegesis. *See Thomas*, 450 U.S. at 716 ("Courts are not arbiters of scriptural interpretation."). But the Complaint must at a minimum identify a plaintiff's religion or explain how a plaintiff's objections are informed by a specific set of religious beliefs or practices. Because the Complaint does neither, Plaintiff has fallen short of stating a claim for relief under Title VII. Accordingly, Count I will be dismissed. Because Plaintiff might be able to plausibly state a claim with the benefit of further factual enhancement, the dismissal will be without prejudice.

## IV. ADA Claims

The ADA "makes it unlawful for an employer, with respect to hiring, to 'discriminate against a qualified individual with a disability because of the disability of such individual.'" *Raytheon Co. v. Hernandez*, 540 U.S. 44, 46 (2003) (quoting 42 U.S.C. § 12112(a)). A "disability" under the ADA typically refers to a "physical or mental impairment that substantially limits one or more major life activities," including, as relevant here, "working." 42 U.S.C. § 12102(1), (2)(A). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111.

### A. *Exhaustion*

The ADA incorporates Title VII's enforcement procedures, including the requirement that a plaintiff exhaust her administrative remedies by filing a charge with the EEOC before filing suit

---

22-3701, 2023 WL 3569127, at *4 (E.D. La. May 19, 2023). But that case appears to be an outlier compared to the others discussed in this Memorandum and cited by the parties, and the Court declines to take that approach.

9

in federal court. *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012). "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). The Fourth Circuit has emphasized that this requirement "should not become a tripwire for hapless plaintiffs," and thus courts will find the exhaustion requirement satisfied so long as the charge refers to the same basic type of discrimination and the same basic fact pattern as in the subsequent federal complaint. *Sydnor*, 681 F.3d at 594. However, a plaintiff fails to exhaust when, for instance, "a charge alleges only racial discrimination but the complaint includes sex discrimination, or where a charge alleges only retaliation but the complaint alleges racial discrimination as well." *Id.* at 593–94 (citations omitted).

Here, it is undisputed that Plaintiff's Charge of Discrimination with the EEOC only checked the box for "Religion," leaving the "Disability" box unchecked.[5] Moreover, the narrative description of the Charge focuses solely on alleged religious discrimination, with no mention of disability whatsoever. (ECF No. 6-2.) Plaintiff counters, however, that she *did* raise the issue of disability discrimination in her response to Defendant's position statement, which was filed with the EEOC. (ECF No. 8-2.) Plaintiff argues that this satisfied the exhaustion requirement, as she "raised the ADA issues at the EEOC before filing the instant suit." (ECF No. 8 at 34.) However, this argument reflects a misunderstanding of the law. The question is not whether a plaintiff raised a specific claim of discrimination at some point during the EEOC process, but whether the plaintiff's *initial charge* raised that claim of discrimination or one so closely related to it that a reasonable investigation would have uncovered it. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) ("[T]he factual allegations made in formal litigation must correspond to those

---

[5] The Court may properly consider the EEOC Charge and related documents on a Motion to Dismiss, as these documents are integral to Plaintiff's claims and their authenticity is not disputed. *Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 227 n.3 (D. Md. 2022).

10

set forth *in the administrative charge*." (emphasis added)); *see also Thiessen v. Stewart-Haas Racing, LLC*, 311 F. Supp. 3d 739, 744–45 (M.D.N.C. 2018) (collecting cases).

Here, Plaintiff failed to raise claims of disability discrimination in her EEOC charge. Accordingly, those claims are procedurally defaulted and must be dismissed. Moreover, as will be discussed below, even assuming she properly exhausted her ADA claims, they would still be dismissed as they are substantively meritless.

### B. *"Regarded as" Disabled Claim*

Turning first to Count III, a plaintiff may establish her disability status by showing that she is "regarded as" being disabled, whether or not she in fact has a disability. 42 U.S.C. § 12102(1)(C). To proceed under a "regarded as" theory, the plaintiff must "establish[] that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A). Plaintiff argues that her employer regarded her as disabled because she was unvaccinated. (ECF No. 1 at 21–24.)

As far as the Court is aware, every court to have considered this issue has reached the same conclusion, that a person's unvaccinated status does not mean that they are "regarded as" disabled for the purposes of the ADA. *See, e.g.*, *Jorgenson v. Conduent Transp. Sols., Inc.*, Civ. No. SAG-22-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023), *aff'd*, No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023); *Schneider v. Cnty. of Fairfax*, Civ. No. 1:22-871 (LMB/WEF), 2023 WL 2333305, at *4–5 (E.D. Va. Mar. 2, 2023), *aff'd*, No. 23-1303, 2023 WL 5524752 (4th Cir. Aug. 28, 2023); *Ellis v. United Airlines*, No. 23 C 123, 2023 WL 5722887, at *2 (N.D. Ill. Sept. 5, 2023); *Norris v. Honeywell Int'l*, Civ. No. 8:22-1675-CEH-TGW, 2023 WL 6256183, at *10 (M.D. Fla. Sept. 26, 2023); *Foshee*, 2023 WL 6845425, at *5–6; *Menk*, 2024 WL 327087, at *24.

11

The Court agrees with the reasoning in these cases, and likewise concludes that Plaintiff has not adequately alleged that she was regarded as disabled.

Plaintiff's "regarded as" theory fails because the facts alleged show at most that Defendant thought Plaintiff's unvaccinated status caused her to be *societally* impaired because of limitations placed on unvaccinated people during periods of the pandemic, such as restrictions on flying and attending certain social gatherings. (*See* ECF No. 1 at 22–23.) But the statutory text refers not to "impairments" writ large, but to "*physical or mental* impairment[s]." 42 U.S.C. § 12102(3)(A) (emphasis added). As another court in this District has explained, the limitations placed on unvaccinated individuals do not give rise to an inference that such individuals were "regarded as" disabled for the purposes of the ADA:

> Plaintiff suggests that society has imposed limitations on the major life activities of unvaccinated individuals by prohibiting them from entering certain facilities and participating in social events. But any such limitations are caused by societal rules, not by the vaccination status of those subject to those rules. Vaccination status itself poses no hindrance to the performance of any tasks. And vaccination status stems from a personal choice, not from a physical or mental impairment.

*Friend v. AstraZeneca Pharms. LP*, Civ. No. SAG-22-03308, 2023 WL 3390820, at *4–5 (D. Md. May 11, 2023) (citations omitted).

For these reasons, Count III will be dismissed with prejudice.

### C. *Medical Inquiry Claim*

As for Count II, the ADA prohibits covered employers from "mak[ing] any inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *see also Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332, 338–39 (4th Cir. 2022). Because the Court has concluded that Plaintiff's unvaccinated status is not a disability for the purposes of the ADA, it follows logically that "an

inquiry about vaccination status does not implicate any disability." *Friend*, 2023 WL 3390820, at *5; *see also Jorgenson*, 2023 WL 1472022, at *5 (holding that an employer's request for vaccine attestation "did not constitute a medical examination or an inquiry about a disability or disabling condition"). As one court explained when analyzing very similar facts:

> To assess her request for a religious exemption, [Defendant] asked about [Plaintiff]'s religious convictions; history with other vaccines, medications, and flu shots; and track record of requesting religious exemptions. Some of these questions plausibly constitute medical inquiries. But not all medical inquiries relate to a real or perceived disability, as an ADA claim must. [Plaintiff] does not plead that [Defendant] raised these questions to ascertain whether she is disabled. By [Plaintiff]'s own account, [Defendant] investigated the sincerity of her religious objection to the vaccine. But the sincerity of one's religious beliefs has no bearing on the disability inquiry on the facts alleged.

*Mendoza v. J.M. Smucker Co.*, ___ F. Supp. 3d ___, Civ. No. 5:22-02281, 2023 WL 3588280, at *4 (N.D. Ohio May 22, 2023) (citations omitted).

Because Plaintiff does not plausibly allege that Defendant made any impermissible inquiries pertaining to her disability status, Count II will be dismissed with prejudice.

**V.      Conclusion**

For the reasons stated above, a separate order will issue granting Defendant's Motion to Dismiss. (ECF No. 6.) Count I will be dismissed without prejudice, and Counts II and III will be dismissed with prejudice. Plaintiff will be given 21 days to file any Amended Complaint.

DATED this __18__ day of March, 2024.

BY THE COURT:

_____
James K. Bredar
Chief Judge